TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Neil Berger
Minta J. Nester

*Attorneys for the Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                  :

| | |
|---|---|
| In re: | Chapter 7 |
| KOSSOFF PLLC, | Case No. 21-10699 (DSJ) |
| Debtor. | |

------------------------------------------------------------ X

| | |
|---|---|
| ALBERT TOGUT, Not Individually but Solely in His Capacity as Chapter 7 Trustee of the Estate of Kossoff PLLC, | |
| Plaintiff, | Adv. Pro. No. 23-_____ (DSJ) |
| v. | |
| MICHAEL BESEN;  34447 EQUITIES, INC.; and ALEC KOSSOFF, | |
| Defendants. | |

------------------------------------------------------------ X

## **COMPLAINT**

Albert Togut, not individually but solely in his capacity as Chapter 7

Trustee (the "Plaintiff" or the "Trustee") of the estate of Kossoff PLLC (the "Debtor") in

the above-captioned Chapter 7 bankruptcy case (the "Chapter 7 Case") and as Plaintiff

in this adversary proceeding (the "Adversary Proceeding"), by and through his

attorneys, Togut, Segal & Segal LLP, hereby makes this complaint (the "Complaint")

against:  Michael Besen ("Besen");  3447 Equities, Inc. ("Equities" and together with

Besen, the "Besen Defendants");  and Alec Kossoff ("Alec," and together with the Besen

Defendants, the "Defendants"), and in support thereof respectfully alleges upon information and belief based upon reasonable diligence that:

## SUMMARY OF THE ACTION

1.      Prior to being disbarred and sent to prison on May 6, 2022 for stealing millions of dollars from the Debtor and dozens of its clients, Mitchell H. Kossoff ("Kossoff") was a prominent real-estate attorney in New York City and served as the sole managing member of the Debtor.

2.      For years, Kossoff improperly used funds in the Debtor's bank accounts to pay his and his family's personal obligations.  He also improperly used the Debtor's funds to satisfy non-Debtor obligations of Burton Packaging Company, Inc. ("Burton Packaging"), Kossoff's failing family business, to and for the benefit of the Defendants.  In total, Kossoff caused $2,124,817.16 to be transferred to the Besen Defendants from the Debtor's operating accounts and commingled IOLA Accounts (defined below).  These payments were attributable to various agreements, promissory notes and/or personal guarantees that were originally executed by Kossoff individually in favor of Besen years before the Debtor was formed.  The Debtor never had any contractual or legal obligation to make these payments, and it didn't receive any consideration in exchange for them.  The funds used to make these fraudulent conveyances belonged to the Debtor and should have been available to the Debtor's creditors.

3.      Kossoff also improperly used the funds in the Debtor's bank accounts to pay rent on account of an apartment occupied by his son, Alec, in a building owned by Equities, which is owned and controlled by Besen.  Those fraudulent transfers were made to and for the benefit of Besen and Alec, and the Debtor did not receive any consideration in exchange for them.

2

4.      The Avoidable Transfers (defined below) made to and for the benefit of Defendants neither conferred a benefit to the Debtor nor advanced any legitimate business purpose of the Debtor.

5.      For the benefit of the Debtor's estate, the Trustee commences this Adversary Proceeding to avoid and recover the Debtor's transfers made to, and for the benefit of, Defendants as fraudulent conveyances or, in the alternative, as preferential transfers;  and (b) to disallow any claims filed by Defendants in the Debtor's above-captioned Chapter 7 Case.

6.      Moreover, Besen aided and abetted Kossoff's fraud, and Kossoff's breaches of his duties to the Debtor, by continuing to provide the means for Kossoff's improper schemes, which caused damages to the Debtor's creditors.  Besen did so with actual knowledge of Kossoff's improper use of the Debtor's resources and bank accounts, and it was to satisfy Kossoff's personal obligations and those of Burton Packaging.  Indeed, Besen received repayments of his personal loans to Kossoff, individually, from the Debtor's operating accounts and IOLA Accounts, and he continued to demand repayment of those loans until shortly before the Petition Date. As a sophisticated participant in the real estate industry, and the principal officer of former clients of the Debtor, there is no other explanation for how Besen, having made numerous loans to Kossoff individually and to Burton Packaging, could have misinterpreted repayments made from the Debtor's IOLA Accounts.

## THE PARTIES AND RELEVANT NON-PARTIES

I.  **The Parties**

7.      Plaintiff is the Chapter 7 Trustee of the Debtor.

8.      Besen is an individual residing in the state of New York.

9.      Besen is President and Chief Executive Officer of Besen Partners, which he originally formed as Besen & Associates in 1988.

10.     Besen & Associates' website advertises that since its founding, it has grown into a full-service investment firm with investment sales, financing, property and asset management (residential and commercial), retail and residential leasing and the sponsorship of several co-investment opportunities.

11.     During the past 15 years, Besen has formed new real estate service entities, including New York City Management LLC ("NYC Management"), which provides office and residential management and leasing services, and Besen Capital, which is the financing arm of Besen & Associates.  Besen Retail provides leasing services for both landlords and tenants.

12.     Equities is a corporation organized and existing under the laws of the state of New York.

13.     Besen is the chief executive officer of Equities.

14.     Besen is the majority shareholder of Equities.

15.     Equities owns a residential apartment building located at 344 West 47th Street, New York, New York 10036 (the "Apartment Building").

16.     Alec is Mitchell Kossoff's son, and he is an individual residing in the state of New York.

17.     Alec is an "insider" of the Debtor pursuant to Bankruptcy Code section 101(31)(B)(vi).

4

II.     **Relevant Non-Parties**

18.     The Debtor is a New York professional limited-liability company that, prior to April 13, 2021 (the "Petition Date"), operated as a law firm located at 217 Broadway, Suite 401, New York, New York 10007.

19.     The Debtor's Articles of Organization were filed with the New York Secretary of State on December 6, 2013.

20.     From its inception until the Petition Date, the Debtor served clients in New York City's real-estate industry.

21.     Prior to the Petition Date, Kossoff was an attorney licensed to practice in the State of New York, and he specialized his law practice in structuring and negotiating real-estate transactions.

22.     Kossoff has been disbarred and he is now incarcerated, serving a jail term of 4.5 years to 13.5 years, based on his own admission that he stole more than $14 million from the Debtor, its clients and others.

23.     Over the course of his career, Kossoff was the sole member of several law firms bearing his name, including:  (1) Kossoff, Alper & Unger;  (2) Kossoff & Unger;  and (3) the Debtor.

24.     Kossoff, Alper & Unger and Kossoff & Unger ceased to operate as law firms prior to the Debtor's formation and organization in December 2013.

25.     Kossoff is the Debtor's sole member and an "insider" of the Debtor as that term is defined in section 101(31)(B) of the Bankruptcy Code.

26.     On February 5, 2007, Kossoff became a director and shareholder of Burton Packaging.

27.     During February 2007, Kossoff owned 49% of the shares of Burton Packaging, and his mother, Phyllis L. Kossoff, owned 51% of the shares of Burton Packaging and she served as Chairman of Burton Packaging.

28.     As of 2019, Kossoff owned 61.8% of Burton Packaging and Phyllis Kossoff owned 38.2% of Burton Packaging.

29.     Phyllis Kossoff is an insider of the Debtor pursuant to Bankruptcy Code Section 101(31)(B)(vi).

30.     At all relevant times herein, Kossoff also had an ownership interest in MBK Group LLC ("MBK"), which was formed to acquire, manage and sell real property.

31.     Kossoff acted as the manager of MBK until he sold his Class B membership interests in MBK to Besen who was another Class B member of MBK.

32.     In 2021, Besen purchased all of the Class A membership interests.

33.     During all relevant times herein, Kossoff was the majority owner and manager of Tenantracers, LLC ("Tenantracers").

34.     NYC Management is a corporation organized and existing under the laws of the state of New York.

35.     NYC Management is the management firm of Besen Partners.

36.     Besen is the founder and chief executive officer of Besen Partners.

## **JURISDICTION AND VENUE**

37.     The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the United States District Court for the Southern District of New York's *Amended Standing Order of Reference, M-431* dated January 31, 2012, which refers such proceedings to this Court.

38.     This Adversary Proceeding is commenced pursuant to sections

105(a), 502(d), 547, 548 and 550 of the Bankruptcy Code;  Rules 3007, 6009 and 7001 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules");  sections 273, 274,

275, 276, 276-a, 278, and 279 of the New York Debtor & Creditor Law as applicable to

transactions occurring before April 4, 2020 ("NYDCL");  sections 273, 274, and 276 of the

New York Debtor & Creditor Law as applicable to transactions occurring on or after

April 4, 2020 (the "NYUVTA");  and sections 3304 and 3306 of title 28 chapter 176 of the

United States Code (the "FDCPA").

39.     This Adversary Proceeding is a core proceeding under

28 U.S.C. §§ 157(b)(2)(A), (B), (F), and (O), and this Court has jurisdiction to hear and to

determine this proceeding and to enter a final order and judgment therein.  In the event

that this Court or any other court finds any part of this Adversary Proceeding to be

"non-core," this Court has non-core concurrent jurisdiction over this proceeding under

28 U.S.C. § 1334 because the relief sought herein relates to the Chapter 7 Case and will

have a material impact on the administration of the Debtor's estate.

40.     Plaintiff consents to the entry of final orders and judgments by this

Court in this Adversary Proceeding pursuant to Bankruptcy Rule 7008.  Plaintiff also

consents to the entry of final orders or judgments by this Court if it is determined that

this Court, absent consent of the parties, cannot enter final orders on judgments

consistent with Article III of the United States Constitution.

41.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and

1409 because this Adversary Proceeding arises in and is related to the Chapter 7 Case

pending in this Court.

## FACTUAL ALLEGATIONS

42.     During the course of Besen's personal and professional relationship with Kossoff, Besen made various loans and advances to Kossoff, Burton Packaging and other entities affiliated with Kossoff.  *See* Proof of Claim No. 51.

43.     None of the Avoidable Transfers that are identified in this Complaint were made to Defendants on account of professional legal services that the Debtor may have provided to clients of the Debtor that were owned and/or controlled by the Besen Defendants.  Instead, the Avoidable Transfers were made on account of personal obligations owed by Kossoff and Alec, and not owed by the Debtor.

## I.     Besen's Investments in Burton Packaging

44.     Between June 5, 2011 and February 8, 2012, Besen loaned $850,000 to Burton Packaging, which loans were later converted into Burton Packaging stock.

45.     On July 1, 2011 the board of directors of Burton Packaging, which consisted of Kossoff and his mother, Phyllis Kossoff, issued eleven shares of common stock of Burton Packaging to Besen in consideration of the sum of $375,000.

46.     As of January 3, 2012, the unpaid portion of Besen's short term loans to Burton Packaging totaled $162,500.

47.     In communications with Phyllis Kossoff during January 2012, Kossoff proposed an additional Burton Packaging stock sale to Besen of 15% of Burton Packaging by having Besen's loans to Burton Packaging converted toward an overall stock purchase price of $475,000.  In a letter dated January 3, 2012, Kossoff explained that such purchase price was reasonable notwithstanding Besen's prior Burton Packaging stock purchase, because Besen "has been a 'good friend' to [Burton Packaging] whenever it needed additional capital and he is taking on a great degree of risk by betting on Burton's future."

8

48.     Between March 13, 2012 and February 11, 2013, Besen made additional loans to Burton Packaging totaling $350,000.

49.     In an email to Besen dated July 1, 2014, Kossoff proposed that Besen acquire 90% of Burton Packaging and he provided Besen with a draft letter of intent for that proposed transaction.  Kossoff explained to Besen in his email:

> "Here is the proposed LOI for Burton Packaging.  Please let me know if you have any changes . . . As you are aware, Burton needs a cash influx . . . because accounts may go negative, and we also need to send money to suppliers . . . "

50.     On July 8, 2014, Kossoff sent an email to Besen:

> "I have been informed because I inquired that it is your intention only to wire 24K into Burton today which is not enough to cover the Valley National ar loan paydown, the Cascades shipment or to cover payroll taxes from last week. I certainly want to let go of Burton and do our deal but I feel as if *this move will destroy in one day what I have spent millions of dollars to protect - while my mother and I are still exposed in terms of the Valley National Loan and the payroll taxes owed.* Someone needs to call me and say something reassuring as early as possible this morning – Mitch"

51.     On July 8, 2014, Besen advanced $50,000 to Burton Packaging by a wire transfer.

52.     On July 26, 2014, Kossoff and Besen exchanged emails:

> Besen:  "Let's talk this week about $300K loan to Burton and $850 equity!!"

> Mitch:  "We can but I'm still tapped out trying to insure Burton's survival and as you know I have put in myself to Burton over $750K this year – let just hope it is enough to even out the company"

53.     In a letter dated December 23, 2016, Kossoff agreed to purchase Besen's equity interest in Burton Packaging and to satisfy the outstanding loan obligations of Burton Packaging to Besen in exchange for a payment of $200,000.

54.     In connection with the transaction referenced in the December 23, 2016 letter, Kossoff executed a promissory note in favor of Besen in the amount of $200,000 (the "December 2016 Promissory Note"), in which he made the Debtor the "maker" and himself the "guarantor" even though the Debtor was not a party to this transaction.

55.     Indeed, the re-purchased Burton Packaging shares (33.5 shares) were transferred to Kossoff, not to the Debtor.  In an email dated January 10, 2017, Kossoff described the transaction in terms of a "[r]epurchase" of his Burton Packaging shares and loans.

56.     Upon completion of the transaction documented by the December 2016 Promissory Note, Besen resigned as an officer and director of Burton Packaging.

57.     As of October 1, 2017, the balances due on account of the September 2016 Promissory Note and December 2016 Promissory Note were $551,000 and $186,000 respectively.  Besen made additional advances to Kossoff during October 2017 totaling $450,000.

58.     The monthly payment obligations to Besen pursuant to the December 2016 Promissory Note was $2,220.41.

## II.     The June 2011 Promissory Note – Loans to Kossoff Individually

59.     In or around May 2011, years prior to the formation and incorporation of the Debtor, Kossoff told Besen that he was planning to personally seek bankruptcy relief, and Besen and Kossoff discussed a personal loan by Besen to Kossoff.

60.     In an email dated May 5, 2011, Kossoff proposed to Besen that, in exchange for "your [Besen] unusually generous offer to bail me out in connection with my personal bankruptcy . . . "Besen would lend $1.25 million to Kossoff personally, and in exchange, Kossoff would provide Besen with "a first lien on all [my] assets including

but not limited to [my] 100% ownership in the law firm, 25% interest in HiPowered Delivery, 30% interest in Tenantracers and 49% interest in Burton Packaging."

61.     On June 1, 2011, Kossoff and Besen executed a promissory note (the "June 2011 Promissory Note"), pursuant to which Besen lent $375,000 to Kossoff.

62.     Kossoff signed the June 2011 Promissory Note in his individual capacity.

63.     Kossoff's obligations to Besen pursuant to the June 2011 Promissory Note were secured by a Security Agreement (the "June 2011 Security Agreement" and together with the June 2011 Promissory Note, the "2011 Agreements"), pursuant to which Kossoff granted Besen a security interest in all of his property interests, including his 49 shares of common stock of Burton Packaging.

64.     Kossoff signed the June 2011 Security Agreement in his individual capacity.

65.     In an email dated April 9, 2012, Kossoff again told Besen that he faced the possibility of a personal bankruptcy filing, and he requested a personal loan from Besen in the amount of $175,000:

> "Farmview is probably going to be foreclosed but none of the investors, except Hight will be taking any action against me . . . If you could advance me an additional $175,000 I can take care of the Hight matter . . ."

### III.   MBK Group

66.     MBK was formed as a closely-held real estate investment company by Besen, Kossoff and others.

67.     Prior to October 18, 2013, Kossoff was a Class B Member of MBK and he held a 15% ownership interest in MBK.

68.     In or around October 2013, Kossoff sold his interest in MBK to Besen for $1.2 million of which $600,000 was due upon execution of the sale agreement, and the remainder was to be paid by Besen in installments.

69.     In or around February 2019, Besen acquired Class A membership interests in MBK from third-parties in exchange for $1.75 million.  At least part of those purchase prices flowed through the Debtor's IOLA account.  As a result, Besen was aware that the Debtor maintained an IOLA bank account separate and apart from its operating bank accounts.

## IV.     The September 2016 Superseding Promissory Note

70.     On or about September 1, 2016, Kossoff, as sole member of the Debtor and individually, executed the Superseding Promissory Note in favor of Besen in the amount of $600,000 (the "September 2016 Superseding Promissory Note").

71.     The September 2016 Superseding Promissory Note purported to "take[] into account all loans extended through the date hereof by [Besen] to [the Debtor] and/or Mitchell H. Kossoff, and replaces in its entirety [the June 2011 Promissory Note]."

72.     Besen did not make any loans to the Debtor between June 1, 2011 and September 1, 2016.

73.     The monthly payment obligation to Besen pursuant to the September 2016 Superseding Promissory Note was $6,661.23.

## V.     The Superseding and Consolidated Note

74.     On October 1, 2017, Kossoff executed the Superseding and Consolidated Note in favor of Besen in the amount of $1.186 million (the "Superseding and Consolidated Note" and together with the 2011 Agreements, the September 2016

12

Superseding Promissory Note, the December 2016 Promissory Note, the "Kossoff-Besen Agreements").

75.     Kossoff signed the Superseding and Consolidated Note in his capacity as sole member of the Debtor, as "Maker" under the note, and individually, as guarantor, even though Besen's prior transactions were with Kossoff individually and with Burton Packaging but not the Debtor.

76.     The Superseding and Consolidated Note purports to "take[] into account all loans extended through October 1, 2017 by Besen to Burton Packaging, the Debtor and/or Kossoff, and replaces in its entirety the September 2016 Promissory Note and the December 2016 Superseding Promissory Note."

77.     The Superseding and Consolidated Note further provides: "The undersigned hereby is executing the within Note based upon loan guaranties previously extended by [Kossoff, PLLC] on behalf of Burton Packaging. Burton Packaging has defaulted on the underlying loans, and as a result of said defaults, [Kossoff, PLLC] is hereby executing the within Note pursuant to its loan guaranties of Burton Packaging's obligations. The undersigned hereby is also executing the within Note in his capacity as sole member of Kossoff, PLLC, and as well is hereby individually guaranteeing the payment thereof, should Kossoff, PLLC, default in its obligations thereunder."

78.     Upon information and belief, Besen did not make any loans to the Debtor, nor did the Debtor guarantee any of Burton Packaging's obligations to Besen.

79.     The Superseding and Consolidated Note was payable in 120 monthly installments of $13,167.03.

## VI.   Alec Kossoff's Apartment

80.   Pursuant to a residential lease agreement dated January 19, 2016 (the "Residential Lease"), Alec, Kossoff's son, leased an apartment in the Apartment Building.

81.   The Residential Lease identifies Equities as the owner of the leased premises and provides an address for Equities "c/o New York City Management."

82.   The original term of the Residential Lease was agreed to end on January 31, 2017, and the rent during this original term was listed as $2,200.

## VII.   Kossoff Uses Debtor Funds to Repay
Obligations to Besen and Besen's Affiliates

83.   From December 2016 and continuing until February 2021, Kossoff improperly caused the Debtor to make numerous payments to and for the benefit of the Defendants from the Debtor's bank accounts in connection with the non-Debtor obligations under the Kossoff-Besen Agreements and the Residential Lease.

84.   Specifically, Kossoff caused the Debtor to make direct payments to Besen from the Debtor's accounts totaling $2,098,367.16 (the "Direct Besen Payments"). Of this amount, $1,120,000 was transferred from the Debtor's IOLA account (defined below) and $978,367.16 was transferred from the Debtor's operating account.

85.   A schedule listing the Direct Besen Payments is attached hereto as **Exhibit 1** and is incorporated by reference as if set forth herein.

86.   The Direct Besen Payments represent repayments in connection with the transactions described in Sections I through V above.  For example:

> a.   Kossoff caused the Debtor to transfer the $6,661.23 monthly payment pursuant to the September 2016 Superseding Promissory Note from its operating account on multiple occasions;

    b.  Kossoff caused the Debtor to transfer the $2,200.41 monthly payment pursuant to the December 2016 Promissory Note from its operating account to Besen no fewer than nine times;

    c.  Kossoff caused the Debtor to transfer the $13,167.03 monthly payment pursuant to the Superseding and Consolidated Note from its operating account to Besen more than two dozen times within just three years.

87.    Kossoff also caused the Debtor to make direct payments to Equities from the Debtor's operating account totaling $26,450 on account of the Residential Lease (the "Direct Equities Payments" and together with the Direct Besen Payments, the "Avoidable Transfers"). A schedule listing the Direct Equities Payments is attached hereto as **Exhibit 2** and is incorporated by reference as if set forth herein.

88.    Kossoff and Alec confirmed that the Direct Equities Payments were made on account of the non-Debtor obligations under the Residential Lease:

    a.  In a January 18, 2016 email chain concerning the Residential Lease for Alec's apartment, Kossoff told a representative of Besen Capital that he "will be messengering the differential check tomorrow." Defendant Equities received $8,400 from the Debtor's operating account by check dated January 15, 2016, which cleared on February 3, 2016.

    b.  By an email dated January 20, 2017, Kossoff asked a representative of Besen's NYC Management how he should "make the check for 8400 for rent for Alec's apartment payable." Jigna Dodhia of NYC Management responded that the check should be "payable to 34447 Equities Inc [sic]" and provided the mailing address. Upon receiving the information, Kossoff instructed Julia McNally, the Debtor's bookkeeper, to "cut this check and bring to me now."

    c.  On August 7, 2017, Alec Kossoff sent an email to Veronica Flores, an employee of the Debtor, copying Mitchell Kossoff, entitled "Birthday Rent."  The email read:

> 3447 Equities, Inc.
> $1,250.00
> August Rent

    d.  In an email dated March 9, 2018, Julia McNally told a representative of NYC Management that Mitchell Kossoff "asked [her] to cut the check for the $8,400" due under the Residential Lease.

89.    As set forth in **Exhibits 1** and **2**, Defendants were either the immediate or mediate transferee of the Avoidable Transfers.

90.    Importantly, these transfers – and the corresponding demands for payment from Besen – continued until the eve of bankruptcy:

    a.  On January 8, 2021 Kossoff caused the Debtor to make a $100,000 transfer from the Debtor's IOLA account to Besen;

    b.  On February 3, 2021, Kossoff caused the Debtor to make a $75,000 transfer from the Debtor's IOLA account to Besen;

    c.  On February 5, 2021, Kossoff caused the Debtor to make a $50,000 payment from the Debtor's IOLA account to Besen;

    d.  In a March 26, 2021 email, Ken Levine, the chief financial officer and general counsel of Besen Partners, told Kossoff that "Michael Besen asked me to remind you about his need for the return of the most recent $150,000 of loans" and he provided wire instructions to Kossoff.

91.    At this same time, Besen knew that Kossoff and the Debtor were financially distressed and had opened new bank accounts for the Debtor after JP Morgan Chase Bank, N.A. had closed the Debtor's bank accounts maintained there:

In an email dated March 17, 2021, copying Besen, Kossoff told a representative of Valley National Bank that Besen had "instructed Signature Bank to wire into [Kossoff's] Valley Account the sum of $60K which would be sufficient to bring the account positive."

92.     Besen was also aware of the Debtor's financial situation.  As early as April 2020, Kossoff told Besen that his "firm is . . . strapped for cash as you can imagine."

## VIII.   The Debtor's IOLA Accounts

93.     Like other law firms in the State of New York, the Debtor was obligated to maintain, and at all relevant times did maintain, in separate bank accounts: (1) funds that had been paid by the Debtor's clients as retainers for legal services to be rendered by the Debtor;  and (2) funds that the Debtor otherwise held in trust for its clients.

94.     Under New York law, law firms are required to segregate such escrow accounts from the firm's own accounts, and lawyers are strictly prohibited from using such escrowed funds unless and until the funds have been earned and deposited into the firm's/lawyer's own accounts.  Any interest or dividends that accrue on funds held in the segregated escrow accounts are the property of the client.

95.     The Debtor maintained what are known as Interest on Lawyer Accounts (the "IOLA Accounts") to purportedly safeguard such client funds.

96.     Under New York law, when a lawyer or a law firm receives funds from a client in a fiduciary capacity and the lawyer determines that the funds are unlikely to generate sufficient interest income to justify the expense of administering a separate segregated account for the client's benefit, the lawyer must deposit such funds into his IOLA account.  Any interest or dividends that accrue on funds held in IOLA accounts are themselves segregated and periodically provided to the New York Interest

on Lawyer Account Fund (the "IOLA Fund"), a New York government entity that distributes funds for the provision of basic legal services to the State's poor.

97.     At all relevant times, Kossoff improperly used the Debtor's IOLA accounts as if they were common depositories of not only client funds, but also his personal funds, loan proceeds, among other types of funds.

98.     Kossoff regularly deposited non-client funds into the Debtor's IOLA accounts.  Kossoff also regularly transferred funds from the Debtor's IOLA accounts to and for the benefit of parties other than the Debtor's clients, including himself and his family members.

99.     For example, between February 2017 and the Petition Date, Kossoff deposited at least $51,000 from his personal checking accounts into the Debtor's IOLA accounts, and he caused the Debtor to transfer at least $136,000 from the Debtor's IOLA accounts into his personal checking accounts.  A schedule of these deposits and transfers is annexed hereto as **Exhibit 3** and is incorporated by reference as set forth herein.

100.     In addition, the Debtor paid $205,000 to Phyllis Kossoff, Kossoff's mother, from the Debtor's IOLA accounts on account of Kossoff's personal obligations to her during the period of March 2014 through May 2018.  A schedule of the deposits and transfers is annexed hereto as **Exhibit 3** and is incorporated by reference as if fully set forth herein.

101.     In addition, Kossoff caused the Debtor to pay $1,120,000 to Besen individually from the Debtor's IOLA accounts on account of the Kossoff-Besen Agreements during the period of January 18, 2017 through February 19, 2021, just two months prior to the Petition Date.

102.    In his May 2022 Plea Agreement (the "Plea Agreement") with the

Manhattan District Attorney, Kossoff admitted that:

> a.  From at least December 2017 to April 2021, I was an
>     attorney licensed to practice in New York and the sole
>     member of Kossoff PLLC, a law firm located in
>     Manhattan.  Part of my law firm's business was to
>     collect and hold funds in trust for my clients and other
>     individuals involved in matters relating to my clients.  I
>     did not have permissions or authority to disburse the
>     funds without authorization from the relevant parties
>     to do so.
>
> b.  . . . I admit that, from on or about December 21, 2017 to
>     on or about April 9, 2021, in the County of New York, I
>     engaged in a systematic ongoing course of conduct with
>     the intent to defraud more than one person and to
>     obtain property from more than one person by false or
>     fraudulent pretenses, representations, or promises.  In
>     doing so, I obtained more than $1,000 from such person.
>     In particular, I defrauded multiple clients, by falsely
>     representing that certain funds would be held in escrow
>     and,     notwithstanding     those     representations,
>     intentionally causing unauthorized and impermissible
>     disbursement of those funds.

A copy of the Plea Agreement is annexed hereto as **Exhibit 4**.

103.    The Appendix to the Plea Agreement lists 35 persons and entities

from whom Kossoff stole totaling approximately $14.5 million, including amounts

stolen from the Debtor's IOLA accounts.

104.    However, the Trustee's investigation to date, including his review

of claims filed in the Chapter 7 Case and in other litigations against Kossoff and the

Debtor, has revealed that Kossoff stole approximately $18.5 million from the Debtor's

clients.

105.    Starting in December 2013 and continuing until January 2021,

Kossoff caused the Debtor to make numerous, improper payments to Defendant from

the Debtor's bank accounts, including its IOLA accounts, for Kossoff's own benefit.

106.    As a result of the commingling of funds in the Debtor's IOLA accounts, transfers from the IOLA accounts constitute transfers of funds in which the Debtor had an interest.

**IX.    Besen's Familiarity with IOLA Accounts**

107.    Besen owned and/or controlled and managed entities that were represented by the Debtor and the funds of those entities were placed in the Debtor's IOLA Accounts.  *See* Besen Claim.

108.    Moreover, Besen had an understanding of how IOLA accounts are regulated and used because, among other reasons, he is a participant in the real estate industry in which such accounts are commonly used.

109.    On or about March 26, 2018, NYC Management entered into a Property Management Agreement (the "PMA") with Steven Croman ("Croman"), who was represented by the Debtor.  The PMA was required under a criminal consent decree (the "Consent Decree") entered into by Croman and the New York State Attorney General (the "AG").

110.    Besen signed the PMA on behalf of NYC Management.

111.    Pursuant to the PMA, NYC Management was to provide property management services to certain residential properties in Croman's portfolio (collectively, the "Managed Properties").  In consideration of those services, Croman was to pay NYC Management a fixed monthly management fee.

112.    Besen and NYC Management selected the Debtor to act as the escrow agent to receive, control and disburse funds from the Managed Properties under the PMA.

113.    As contemplated by Paragraph 19(b) of the PMA, NYC Management, as the property management company, collected rent from tenants of the

Managed Properties.  Those rents were deposited into the Debtor's IOLA accounts and were transferred to the New York State Attorney General, as required by the Consent Decree, under Besen's supervision.

## X.    The Debtor Received No Value

114.    The Debtor received no value or benefit in exchange for the Avoidable Transfers.

115.    The Debtor was not a proper obligor under either the Kossoff-Besen Agreements or the Residential Lease, and the proceeds underlying the Kossoff-Besen Agreements were advanced by Besen to Kossoff individually or to Burton Packaging but not to the Debtor.

116.    There was no business purpose for the Debtor's transfers in connection with the Residential Lease.

117.    Instead, the Besen Defendants, Kossoff, and Alec received all of the value of the Avoidable Transfers that were made to or for their benefit.

118.    Besen recouped some of his loans made to Kossoff and Burton Packaging in connection with the Kossoff-Besen Agreements, and Kossoff personally benefitted by being relieved of his personal obligations to Besen, all at the expense of the Debtor and its creditors.

119.    Similarly, Equities received rental payments, and Alec was relieved, in part, of his personal obligations under the Residential Lease.

## XI.    The Debtor Was Insolvent, Had an Unreasonably Small Capital Base, and Incurred, and Intended to Incur, Debts Beyond the Debtor's Ability to Repay Them During the Relevant Time Period

120.    The Debtor's books and records demonstrate that the Debtor was insolvent no later than December 31, 2013 and remained insolvent at all relevant times thereafter until the Petition Date, by any measurement of insolvency.

121.    The following balance-sheet analysis of the Debtor's assets and liabilities based upon the Debtor's records demonstrates the Debtor's insolvency:

| DATE | ASSETS | LIABILITIES | NET ASSETS |
|---|---|---|---|
| 12/31/2013 | $572,508 | $2,840,663 | ($2,268,155) |
| 06/30/2014 | $233,469 | $2,844,222 | ($2,610,752) |
| 12/31/2014 | $843,893 | $2,804,103 | ($1,960,210) |
| 01/26/2015 | $585,160 | $3,220,650 | ($2,635,490) |
| 06/30/2015 | $1,367,474 | $5,432,675 | ($4,065,201) |
| 12/31/2015 | $770,028 | $7,386,390 | ($6,616,362) |
| 06/21/2016 | $1,009,438 | $7,850,757 | ($6,841,319) |
| 06/30/2016 | $757,104 | $8,829,352 | ($8,072,248) |
| 12/31/2016 | $1,310,242 | $11,800,038 | ($10,489,796) |
| 06/30/2017 | $1,377,668 | $12,327,635 | ($10,949,967) |
| 12/31/2017 | $1,202,186 | $14,392,997 | ($13,190,811) |
| 06/30/2018 | $1,392,697 | $15,859,134 | ($14,466,437) |
| 12/31/2018 | $1,688,485 | $19,211,671 | ($17,523,187) |
| 06/30/2019 | $1,834,435 | $20,545,379 | ($18,710,944) |
| 12/31/2019 | $1,207,978 | $25,479,490 | ($24,271,512) |
| 06/30/2020 | $1,375,584 | $27,387,619 | ($26,012,034) |
| 12/31/2020 | $1,116,077 | $29,600,162 | ($28,484,085) |
| 03/31/2021 | $936,069 | $29,959,993 | ($29,023,924) |

122.    Additional facts support the conclusion that the Debtor was insolvent, insufficiently capitalized, and/or unable to pay its debts as they became due during the periods relevant to this Complaint.  For example:

a. The Debtor conducted its business with insufficient capital no later than December 31, 2013, and remained insufficiently capitalized at all relevant times thereafter, until the Petition Date;

b. The Debtor incurred, was intending to incur, and/or believed that it would incur debts beyond its ability to pay such debts as they matured beginning on or after December 31, 2013, and continuing until the Petition Date;

c. The Debtor experienced regular overdrafts and negative bank account balances at Valley National Bank and J.P. Morgan Chase Bank, N.A. during the relevant period;

d. The Debtor failed to pay various creditors on a timely basis and could not timely meet its obligations as they became due during the relevant period;

e. Beginning during 2016 and continuing until April 2021, the Debtor borrowed and became obligated to repay at least $9.6 million in numerous high-interest-rate cash-advance transactions that purportedly pledged the Debtor's future accounts receivable as collateral for same-day cash;

f. On February 10, 2022, the Internal Revenue Service (the "IRS") filed proof of claim number 37 in the Chapter 7 Case (the "IRS POC").  The IRS POC lists obligations owed by the Debtor for unpaid employee-withholding taxes in the amount of $335,411.08 due for periods beginning in 2015;

g. In his plea agreement with the Manhattan District Attorney, Kossoff admitted that since at least December 2017, he stole more than $14 million from multiple persons and clients of the Debtor, including from the Debtor's IOLA accounts;  and

h. Proofs of Claim filed in the Chapter 7 Case total not less than $20 million.

## XII.   The Debtor is Forced into Bankruptcy

123.    On the Petition Date, creditors of the Debtor commenced the

Chapter 7 Case by filing an involuntary petition for relief under Chapter 7 of the

Bankruptcy Code against the Debtor in this Court.

124.    On May 11, 2021, this Court entered an order for relief under Chapter 7 of the Bankruptcy Code [Docket No. 14].

125.    On May 12, 2021, the Trustee was appointed as the Chapter 7 Interim Trustee of the Debtor [Docket No. 15];  he accepted his appointment, duly qualified, and following the section 341 meeting of creditors, he is currently acting as the trustee of the Debtor's estate.

126.    On April 8, 2022, Besen filed the Besen Claim in the Chapter 7 Case.

127.    The Besen Claim asserts an unsecured claim in the amount of $982,662.95.

128.    The Besen Claim asserts that the Debtor owes $892,662.95, plus interest and late charges), pursuant to the Superseding and Consolidated Note and $90,000 on account of funds wired to the Debtor's escrow account because "Kossoff and his law firm always seemed to be chronically short of cash and because he had made a number of good faith payments on the Note."

XIII.   **The IRS Holds a Prepetition Claim Against the Debtor**

129.    On December 15, 2021, the Debtor filed schedules of assets and liabilities and a statement of financial affairs [Docket No. 310], and on April 5, 2022, the Debtor filed amendments thereto (cumulatively, the "Schedules") [Docket No. 359].

130.    As of the Petition Date, the Debtor owed unpaid prepetition tax obligations to the IRS for the tax year ending December 31, 2015, which is subject to the IRS POC (the "IRS Claim").  The Debtor listed the IRS Claim as an unsecured priority claim in its Schedules in the amount of $382,000.

131.    The IRS's right to assess the IRS Claim on account of 2015 tax liabilities arose no later than January 1, 2016.

24

132.    The Debtor received notice of the tax assessment underlying the IRS Claim no later than March 28, 2016.

133.    The IRS POC lists the obligation owed by the Debtor as unpaid taxes in the amount of $335,411.08 under the Federal Insurance Contributions Act.

134.    The IRS Claim, as set forth in the timely-filed IRS POC, is an allowable claim under section 502 of the Bankruptcy Code.

135.    The IRS Claim is a debt owed to the United States of America.

136.    The IRS is a predicate "creditor" within the meaning of section 544(b) of the Bankruptcy Code.

**XIV.   Kossoff Admits Scheme to Defraud and Is Sentenced to Prison**

137.    On December 13, 2021, in open court in New York, Kossoff pleaded guilty to, among other things, orchestrating a scheme to defraud the Debtor's clients.

138.    Kossoff admitted that he stole at least $14.5 million from dozens of clients and others, including millions of dollars that had been deposited into the Debtor's bank IOLA and operating accounts.

139.    On May 6, 2022, New York State Supreme Court Judge Laurie Peterson sentenced Kossoff to serve not less than 4.5 years but not more than 13.5 years in prison as punishment for his crimes.

## COUNT I

**AVOIDANCE AND RECOVERY OF**
**CONSTRUCTIVELY FRAUDULENT TRANSFERS PURSUANT TO**
**TO 11 U.S.C. §§ 544 and 550;  NYDCL §§ 273-75 and 278-79;  and**
**FDCPA §§ 3304 and 3306**

**(Defendants Besen, Equities and Alec)**

140.    Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

141.    Between January 15, 2016 and April 3, 2020, during the six (6) years preceding the Petition Date, the Debtor made transfers to, or for the benefit of, Besen (the "Group-One Transfers"), as identified by the dates and in the amounts set forth in the schedule which is annexed hereto as **Exhibit 5** and which is incorporated by reference as if fully set forth herein.[1]

142.    The Debtor did not receive fair consideration or reasonably equivalent value in exchange for the Group-One Transfers because the Debtor did not receive any benefit from them.

143.    Instead, the Group-One Transfers benefited Besen, who was the initial, immediate, and/or mediate transferees and/or beneficiaries of the Group-One Transfers.

144.    The Group-One Transfers were also made for the benefit of Kossoff and Alec, who were "insiders" of the Debtor at the time of each of the Group-One Transfers, namely, the extinction and/or reduction of Kossoff's personal obligations to Besen to the detriment of the Debtor's present and/or future creditors.

145.    The Debtor was insolvent when each of the Group-One Transfers was made, or was rendered or became insolvent as a result of the Group-One Transfers.

146.    The Debtor made the Group-One Transfers when the Debtor was engaged, and/or was about to engage, in business or transactions for which its remaining property after making the Group-One Transfers was an unreasonably small amount of capital.

147.    The Debtor remained inadequately capitalized as a result of the Group-One Transfers thereafter until the Petition Date.

---

[1]    As set forth in **Exhibit 5**, the Group-One Transfers consist of both Direct Besen Transfers and Direct Equities Transfers.

148.    The Debtor made the Group-One Transfers when the Debtor intended to incur, believed that it would incur, and/or reasonably should have believed that it would incur debts beyond its ability to pay them as they matured and/or became due.

149.    The Debtor remained unable to pay its debts as they matured and/or became due as a result of the Group-One Transfers thereafter until the Petition Date.

150.    In addition to being fraudulent for these reasons, each of the Group-One Transfers made to and for the benefit of Besen was fraudulent insofar as these transfers transferred the Debtor's assets to and for the benefit of Kossoff and Alec, who were "insiders" of the Debtor at the time of each of the Group-One Transfers, to the detriment of the Debtor's present and/or future creditors.

151.    The Group-One Transfers that were initially made to Kossoff were fraudulent for the reasons set forth herein.

152.    Pursuant to sections 502(d), 544, 550(a), and 551 of the Bankruptcy Code and (a) sections 273, 274, 275, 278, and/or 279 of the NYDCL and/or (b) sections 3304(a)(1), 3304(b)(1)(B)(i), 3304(b)(1)(B)(ii), and 3306 of the FDCPA, Plaintiff is entitled to a judgment against Besen:  (i) avoiding the Group-One Transfers;  (ii) recovering each Group-One Transfer and/or its value from Besen;  (iii) disallowing any claims filed by Besen until such time as each Group-One Transfer and/or its value is repaid to the Plaintiff;  (iv) awarding attorneys' fees and costs from Defendants;  and (v) awarding any other relief that the Court deems just and proper.

## COUNT II

**AVOIDANCE AND RECOVERY OF
FRAUDULENT TRANSFERS PURSUANT TO
11 U.S.C. §§ 544 and 550;  NYDCL §§ 276, 276-a, and 278-79;  and
FDCPA §§ 3304(b)(1)(A) and 3306**

**(Defendants Besen, Equities and Alec)**

153.    Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

154.    Under oath and in open court at the hearing at which the New York court accepted his Plea Agreement, Kossoff admitted to "engag[ing] in a systematic ongoing course of conduct with the intent to defraud . . . multiple clients of [his] law firm"—present and/or future creditors of the Debtor—"[f]rom at least December 2017 to April 2021."

155.    The Debtor made the Group-One Transfers with actual intent to hinder, delay, or defraud one or more present and/or future creditors of the Debtor.

156.    The Group-One Transfers did not, and were not intended to, benefit the Debtor.

157.    The Group-One Transfers were intended to benefit Besen, who was the initial, immediate, and/or mediate transferee and/or beneficiary of the Group-One Transfers.

158.    Each of the Group-One Transfers transferred the Debtor's assets to and for the benefit of Kossoff, who was an "insider" of the Debtor at the time of each of the Group-One Transfers, namely, the extinction and/or reduction of Kossoff's personal obligations to Besen to the detriment of the Debtor's present and/or future creditors.

159.    In addition to being fraudulent for these reasons, each of the Group-One Transfers made to and for the benefit of Besen was made with actual intent

28

to hinder, delay, or defraud present and/or future creditors of the Debtor insofar as each of these transfers transferred the Debtor's assets to and for the benefit of Kossoff, who was an "insider" of the Debtor at the time of each of the Group-One Transfers, to the detriment of the Debtor's present and/or future creditors.

160.    Pursuant to sections 502(d), 544, 550(a), and 551 of the Bankruptcy Code and (a) sections 276, 276-a, 278, and/or 279 of the NYDCL and/or (b) sections 3304(b)(1)(A) and 3306 of the FDCPA, Plaintiff is entitled to a judgment against Besen: (i) avoiding the Group-One Transfers;  (ii) recovering the Group-One Transfers and/or its value from Besen to whom or for whose benefit each Group-One Transfer was made; (iii) disallowing any claim filed by Besen until such time as each Group-One Transfer and/or its value is repaid to the Plaintiff;  (iv) awarding attorneys' fees and costs from Defendants;  and (v) awarding any other relief that the Court deems just and proper.

## COUNT III

**AVOIDANCE AND RECOVERY OF
CONSTRUCTIVELY FRAUDULENT TRANSFERS
PURSUANT TO 11 U.S.C. §§ 544 and 550;  NYUVTA §§ 273(a)(2), 274, and 276;  and
FDCPA §§ 3304 and 3306**

**(Defendant Besen)**

161.    Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

162.    Between April 4, 2020 and the Petition Date, the Debtor made transfers to, or for the benefit of, Besen (the "Group-Two Transfers"), as identified by the dates and in the amounts set forth in the schedule which is annexed hereto as **Exhibit 6** and which is incorporated by reference as if fully set forth herein.

163.    The Debtor did not receive reasonably equivalent value in exchange for the Group-Two Transfers because the Debtor did not receive any benefit from them.

164.    Instead, the Group-Two Transfers were intended to benefit Besen, who was the initial, immediate, and/or mediate transferees and/or beneficiaries of the Group-Two Transfers.

165.    Each of the Group-Two Transfers were also made to benefit Kossoff, who was an "insider" of the Debtor at the time of each of the Group-Two Transfers, namely, the extinction and/or reduction of Kossoff's personal obligations to Besen, to the detriment of the Debtor's present and/or future creditors.

166.    The Debtor was insolvent when each of the Group-Two Transfers was made or was rendered or became insolvent as a result of the Group-Two Transfers.

167.    The Debtor made the Group-Two Transfers when the Debtor was engaged, and/or was about to engage, in business or transactions for which its remaining property after making the Group-Two Transfers was an unreasonably small amount of capital.

168.    The Debtor remained inadequately capitalized as a result of the Group-Two Transfers thereafter until the Petition Date.

169.    The Debtor made the Group-Two Transfers when the Debtor intended to incur, believed that it would incur, and/or reasonably should have believed that it would incur debts beyond its ability to pay them as they matured and/or became due.

170.    The Debtor remained unable to pay its debts as they matured and/or became due as a result of the Group-Two Transfers thereafter until the Petition Date.

171.    In addition to being fraudulent for these reasons, each of the Group-Two Transfers made to and for the benefit of Besen was actually fraudulent insofar as each of these transfers were for the benefit of Kossoff, who was an "insider" of the Debtor when each of the Group-Two Transfers were made, and to the Debtor's present and/or future creditors' detriment.

172.    Pursuant to sections 502(d), 544, 550(a), and 551 of the Bankruptcy Code and (a) sections 273(a)(2)(i), 273(a)(2)(ii), 274(a), 274(b), and 276 of the NYUVTA and/or (b) sections 3304(a)(1), 3304(b)(1)(B)(i), 3304(b)(1)(B)(ii), and 3306 of the FDCPA, Plaintiff is entitled to a judgment against Besen:  (i) avoiding the Group-Two Transfers; (ii) recovering each Group-Two Transfer and/or its value from Besen to whom each Group-Two Transfer was made;  (iii) disallowing any claim filed by Besen until such time as each Group-Two Transfer and/or its value is repaid to the Plaintiff; (iv) awarding attorneys' fees and costs from Besen;  and (v) awarding any other relief that the Court deems just and proper.

## COUNT IV

### AVOIDANCE AND RECOVERY OF
### FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 544 and 550;
### NYUVTA §§ 273(a)(1) and 276;  and FDCPA §§ 3304(b)(1)(A) and 3306

### (Defendant Besen)

173.    Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

174.    Under oath and in open court at the hearing at which the New York court accepted his Plea Agreement, Kossoff admitted to "engag[ing] in a systematic ongoing course of conduct with the intent to defraud . . . multiple clients of [his] law firm"—present and/or future creditors of the Debtor—"[f]rom at least December 2017 to April 2021."

175.    The Debtor made the Group-Two Transfers with actual intent to hinder, delay, or defraud one or more present and/or future creditors of the Debtor.

176.    The Group-Two Transfers did not, and were not intended to, benefit the Debtor.

177.    The Group-Two Transfers were intended to benefit Besen, who was the initial, immediate, and/or mediate transferees and/or beneficiaries of the Group-Two Transfers.

178.    Each of the Group-Two Transfers were also made for the benefit of Kossoff, who was an "insider" of the Debtor at the time of each of the Group-Two Transfers, namely, the extinction and/or reduction of Kossoff's personal obligations to Besen, to the detriment of the Debtor's present and/or future creditors.

179.    In addition to being fraudulent for these reasons, each of the Group-Two Transfers made to and for the benefit of Besen was made with actual intent to hinder, delay, or defraud present and/or future creditors of the Debtor insofar as each of these transfers transferred the Debtor's assets to and for the benefit of Kossoff, who was an "insider" of the Debtor at the time of each of the Group-Two Transfers, to the detriment of the Debtor's present and/or future creditors.

180.    Pursuant to sections 502(d), 544, 550(a), and 551 of the Bankruptcy Code and (a) sections 273(a)(1) and 276 of the NYUVTA and/or (b) sections 3304(b)(1)(A) and 3306 of the FDCPA, Plaintiff is entitled to a judgment against Besen: (i) avoiding the Group-Two Transfers; (ii) recovering each Group-Two Transfer and/or its value from Besen; (iii) disallowing any claim filed by Besen until such time as each Group-Two Transfer and/or its value is repaid to the Plaintiff; (iv) awarding attorneys' fees and costs from Besen; and (v) awarding any other relief that the Court deems just and proper.

## COUNT V

### AVOIDANCE AND RECOVERY OF
### CONSTRUCTIVELY FRAUDULENT TRANSFERS
### PURSUANT TO 11 U.S.C. §§ 548(a)(1)(B) and 550

### (Defendant Besen)

181.    Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

182.    Between August 26, 2019 and the Petition Date, within two (2) years prior to the Petition Date, the Debtor made transfers to, or for the benefit of, Besen (the "Two-Year Transfers"), as identified by the dates and in the amounts set forth in the schedule which is annexed hereto as **Exhibit 7** and which is incorporated by reference as if fully set forth herein.[2]

183.    The Debtor did not receive reasonably equivalent value in exchange for the Two-Year Transfers because the Debtor did not receive any benefit from them.

184.    Instead, the Two-Year Transfers benefited Besen and Kossoff, who were the initial, immediate, and/or mediate transferees and/or beneficiaries of the Two-Year Transfers.

185.    The Debtor was insolvent when each of the Two-Year Transfers was made, or was rendered or became insolvent as a result of the Two-Year Transfers.

186.    The Debtor made the Two-Year Transfers when the Debtor was engaged, and/or was about to engage, in business or transactions for which its remaining property after making the Two-Year Transfers was an unreasonably small amount of capital.

---

[2]    As set forth in **Exhibit 7**, the Two-Year Transfers include the Direct Besen Transfers that occurred between August 26, 2019 and the Petition Date.

187.     The Debtor remained inadequately capitalized as a result of the Two-Year Transfers until the Petition Date.

188.     The Debtor made the Two-Year Transfers when the Debtor intended to incur, or believed that it would incur, debts beyond its ability to pay them as they matured and/or became due.

189.     The Debtor remained unable to pay its debts as they matured and/or became due as a result of the Two-Year Transfers thereafter until the Petition Date.

190.     The Two-Year Transfers that were initially made to and for Defendants were fraudulent for the reasons set forth herein.

191.     Pursuant to sections 502(d), 548(a)(1)(B)(ii)(I), 548(a)(1)(B)(ii)(II), 548(a)(1)(B)(ii)(III), 550(a), and 551 of the Bankruptcy Code, Plaintiff is entitled to a judgment against Besen: (i) avoiding the Two-Year Transfers; (ii) recovering each Two-Year Transfer and/or its value from the Besen to whom each Two-Year Transfer was made; (iii) disallowing any claim filed by Besen until such time as each Two-Year Transfer and/or its value is repaid to the Plaintiff; (iv) awarding attorneys' fees and costs from Besen; and (v) awarding any other relief that the Court deems just and proper.

## COUNT VI

### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 548(a)(1)(A) and 550

### (Defendant Besen)

192.     Plaintiff repeats and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

193.     Under oath and in open court at the hearing at which the New York court accepted his Plea Agreement, Kossoff admitted to "engag[ing] in a systematic ongoing course of conduct with the intent to defraud . . . multiple clients of [his] law firm"—present and/or future creditors of the Debtor—"[f]rom at least December 2017 to April 2021."

194.     The Debtor made the Two-Year Transfers with actual intent to hinder, delay, or defraud one or more entities to which the Debtor was or became indebted.

195.     The Two-Year Transfers did not, and were not intended to, benefit the Debtor.

196.     Instead, the Two-Year Transfers were intended to benefit Besen and Kossoff, who were the initial, immediate, and/or mediate transferees and/or beneficiaries of the Two-Year Transfers.

197.     Each of the Two-Year Transfers were also made to benefit Kossoff, who was an "insider" of the Debtor at the time of each of the Two-Year Transfers, namely, the extinction and/or reduction of Kossoff's personal obligations to Besen, to the detriment of the Debtor's present and/or future creditors.

198.     In addition to being fraudulent for these reasons, each of the Two-Year Transfers made to and for the benefit of Besen was made with actual intent to hinder, delay, or defraud present and/or future creditors of the Debtor.

199.     Pursuant to sections 502(d), 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code, Plaintiff is entitled to a judgment against Besen:  (i) avoiding the Two-Year Transfers;  (ii) recovering each Two-Year Transfer and/or its value from Besen;  (iii) disallowing any claim filed by Besen until such time as each Two-Year Transfer and/or its value is repaid to the Plaintiff;  (iv) awarding attorneys' fees and

costs from Besen;  and (v) awarding any other relief that the Court deems just and proper.

## COUNT VII

### AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547(b) and 550

### (Defendant Besen)

200.    Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

201.    Within ninety (90) days prior to the Petition Date, the Debtor made certain transfers to, or for the benefit of, Besen (the "Preferential Transfers").

202.    The Preferential Transfers, which total no less than $125,000, are identified by dates and amounts in the schedule which is annexed hereto as **Exhibit 8** and which is incorporated by reference as if fully set forth herein.

203.    Besen were the initial, immediate, and/or mediate transferee of the Preferential Transfers.

204.    Subject to proof, Plaintiff pleads, in the alternative, that to the extent that Besen demonstrates that any of the Preferential Transfers were made to Defendants for or on account of an antecedent debt owed by the Debtor before each of the Preferential Transfers was made:  (a) the Debtor was insolvent at the time each of the Preferential Transfers was made;  and (b) the Preferential Transfers enabled Besen to receive more than she would have received if the case were under Chapter 7 of the Bankruptcy Code, the Preferential Transfers had not been made, and the antecedent debt were paid to the extent provided under the Bankruptcy Code.

205.    Plaintiff is entitled to the presumption of the Debtor's insolvency pursuant to section 547(f) of the Bankruptcy Code.

206.    Pursuant to sections 547(b) and 550 of the Bankruptcy Code,
Plaintiff is entitled to a judgment against Besen:  (i) avoiding the Preferential Transfers;
(ii) recovering each Preferential Transfer and/or its value from Besen;  (iii) disallowing
any claim filed by Besen until such time as each Preferential Transfer and/or its value is
repaid to the Plaintiff;  (iv) awarding attorneys' fees and costs from Besen;  and
(v) awarding any other relief that the Court deems just and proper.

## COUNT VIII

## UNJUST ENRICHMENT

### (Defendants Besen, Equities and Alec)

207.    Plaintiff repeats and realleges each of the foregoing allegations of
this Complaint as if fully set forth herein.

208.    The Debtor made the Avoidable Transfers to, or for the benefit of,
Defendants, thus conferring benefits upon those Defendants in the amount of the value
of the Avoidable Transfers.

209.    Defendants knowingly and voluntarily accepted and retained the
benefits conferred upon them by the Debtor while knowing that they did not provide
fair consideration or reasonably equivalent value to the Debtor in exchange for the
Avoidable Transfers.

210.    Defendants have been unjustly enriched at the expense of the
Debtor's estate and its creditors.

211.    It would be inequitable and unjust for Defendants to retain the
benefits conferred upon them in these circumstances.

212.    Accordingly, Plaintiff is entitled to a judgment allowing the
Plaintiff to recover, for the benefit of the Debtor's estate, an amount to be determined at
trial that reflects the value of Defendants' unjust enrichment resulting from the

Avoidable Transfers, including the value of any other benefits fraudulently conferred upon such Defendants by the Debtor that Plaintiff may uncover during discovery.

## COUNT IX

## AIDING AND ABETTING FRAUD

### (Defendant Besen)

213.    Plaintiff repeats and realleges each of the foregoing allegations of the Complaint as if fully set forth herein.

214.    As set forth in greater detail above, Kossoff committed fraud and breached his duties to the Debtor by misappropriating millions of dollars of funds from the Debtor and its bank accounts.

215.    Besen is a sophisticated person with extensive experience dealing in commercial and real estate matters.

216.    The uncontroverted evidence identified above and contained in the books, records and documents that the Trustee has recovered to date demonstrate that Besen had actual knowledge that his various personal transactions with Kossoff individually and with Burton Packaging were separate and apart from any of the transactions that Besen's various entities had with the Debtor.

217.    Moreover, the uncontroverted evidence identified above, contained in documents recovered by the Trustee to date, in information made public by Besen and his various businesses, and the Besen Claim filed in the Chapter 7 Case, make clear that Besen was aware of:  (a) his separate capacities as (i) the principal of clients of the Debtor and (ii) a personal lender to Kossoff and Burton Packaging;  and (b) the difference between personal bank accounts, business operating accounts, and lawyer's IOLA bank accounts.

218.    Despite such knowledge, Besen knowingly negotiated and entered into various agreements with Kossoff with the intent to improperly make the Debtor obligated to satisfy obligations of Kossoff personally, Burton Packaging and Alec ,and to otherwise benefit himself and the Debtor's insiders.

219.    In furtherance of Besen's improper conduct, he knowingly accepted numerous improper transfers from the Debtor's operating and IOLA accounts, and he did so with actual knowledge of Kossoff's personal financial distress, the financial distress of Burton Packaging, and that he was seeking and obtaining transactions with, and payments from, the Debtor when such transactions would serve no legitimate business purpose of the Debtor.

220.    As a sophisticated actor in the real estate industry, Besen knew and/or should have known the proper purpose of IOLA accounts.

221.    Besen knew and/or should have known that Kossoff was engaged in fraudulent activity that harmed the Debtor and its creditors, yet Besen substantially aided and assisted Kossoff because it advanced Besen's personal interests.  Indeed, Besen had an extraordinary financial incentive to aid and abet Kossoff's breaches of his duties to the Debtor and to advance Kossoff's improper activities.

222.    As a direct and proximate result of Besen's aiding and abetting of Kossoff's breaches of duties to the Debtor and Kossoff's fraudulent activities, the Debtor's creditors have been damaged in an amount to be proven at trial.

## <u>RESERVATION OF RIGHTS</u>

223.    The Trustee does not waive and instead specifically reserves all of

his rights, claims, and defenses as they pertain to the Debtor and any claims or liens that

Defendants may assert against the Debtor's estate.  The Trustee expressly reserves the

right to amend and supplement this Complaint or to commence a new action against

Defendants with other claims as his investigation continues.

**WHEREFORE**, for the foregoing reasons, Plaintiff respectfully requests

that this Court enter judgment against Defendants:

a)    avoiding all Avoidable Transfers pursuant to sections 544, 547, and 548 of the Bankruptcy Code;  NYDCL sections 273 *et seq.*;  NYUVTA sections 273 *et seq.*;  and sections 3304 and 3306 of the FDCPA;

b)    pursuant to section 550(a) of the Bankruptcy Code, directing Defendants to pay to Plaintiff an amount to be determined at trial that is not less than the full value of the Avoidable Transfers that each Defendant received, plus interest and costs;

c)    preserving all avoided transfers and liens for the benefit of the Debtor's estate pursuant to section 551 of the Bankruptcy Code;

d)    disallowing any of Defendants' claims pursuant to section 502(d) of the Bankruptcy Code;

e)    requiring Defendants to return the unjust benefits conferred upon them by the Debtor in an amount to be determined at trial that is not less than the full value of the Avoidable Transfers, plus interest and costs;

f)    granting damages in favor of Plaintiff on account of Besen's aiding and abetting of Kossoff's breaches of his duties to the Debtor and Kossoff's fraudulent activities, in amounts to be determined at trial;

g)    awarding post-judgment interest at the maximum legal rate running from the date of the Judgment until the date the Judgment is paid in full, plus costs;

h)  requiring Defendants to pay forthwith the amount of the Judgment;  and

i)  granting Plaintiff such other and further relief as the Court deems just and proper.

Dated:    New York, New York
          January 24, 2023

ALBERT TOGUT, not individually but solely in his capacity as Chapter 7 Trustee,
By his Attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

*/s/ Neil Berger*
ALBERT TOGUT
NEIL BERGER
MINTA J. NESTER
One Penn Plaza, suite 3335
New York, New York 10119
(212) 594-5000

# **EXHIBIT 1**

## **Direct Besen Transfers**

**KOSSOFF, PLLC**

**EXHIBIT 1**
**Direct Besen Payments**

| Payee | Account Type I = IOLA O = Operating | Check/ Payment Date | Check/ Payment Clear Date | Check # | Check/Payment Amount |
|-------|-------------------------------------|---------------------|---------------------------|---------|----------------------|
| Michael Besen | O | 10/3/16 | 10/7/16 | 27706 | $6,661.23 |
| Michael Besen | O | 11/4/16 | 11/10/16 | 28112 | $6,661.23 |
| Michael Besen | O | 12/5/16 | 12/12/16 | 28503 | $6,661.23 |
| Michael Besen | O | 1/17/17 | 2/1/17 | 29028 | $6,661.23 |
| Michael Besen | I | 2/6/17 | 2/6/17 | WIRE | $50,000.00 |
| Michael Besen | O | 2/28/17 | 3/8/17 | 29504 | $6,661.23 |
| Michael Besen | O | 2/28/17 | 3/8/17 | 29505 | $2,220.41 |
| Michael Besen | I | 3/9/17 | 3/9/17 | WIRE | $50,000.00 |
| Michael Besen | O | 3/30/17 | 4/3/17 | 29921 | $2,220.41 |
| Michael Besen | O | 3/30/17 | 4/3/17 | 29922 | $6,661.23 |
| Michael Besen | O | 4/25/17 | 5/2/17 | 30272 | $6,661.23 |
| Michael Besen | O | 4/25/17 | 5/2/17 | 30273 | $2,220.41 |
| Michael Besen | O | 5/19/17 | 5/24/17 | 30575 | $6,661.23 |
| Michael Besen | O | 5/19/17 | 5/24/17 | 30576 | $2,220.41 |
| Michael Besen | O | 6/1/17 | 7/7/17 | 31018 | $6,661.23 |

**KOSSOFF, PLLC**

## EXHIBIT 1
### Direct Besen Payments

| Payee | Account Type I = IOLA O = Operating | Check/ Payment Date | Check/ Payment Clear Date | Check # | Check/Payment Amount |
|---|---|---|---|---|---|
| Michael Besen | O | 6/1/17 | 7/7/17 | 31019 | $2,220.41 |
| Michael Besen | O | 7/10/17 | 8/7/17 | 31299 | $6,661.23 |
| Michael Besen | O | 7/10/17 | 8/7/17 | 31300 | $2,220.41 |
| Michael Besen | O | 8/14/17 | 8/11/17 | 31675 | $2,220.41 |
| Michael Besen | O | 8/14/17 | 8/11/17 | 31674 | $6,661.23 |
| Michael Besen | O | 9/11/17 | 9/21/17 | 32146 | $6,661.23 |
| Michael Besen | O | 9/11/17 | 9/21/17 | 32147 | $2,220.41 |
| Michael Besen | O | 9/26/17 | 10/11/17 | 32316 | $2,220.41 |
| Michael Besen | O | 9/26/17 | 10/11/17 | 32315 | $6,661.23 |
| Michael Besen | O | 9/29/17 | 10/11/17 | 32326 | $3,743.67 |
| Michael Besen | O | 11/6/17 | 12/5/17 | 32813 | $13,167.03 |
| Michael Besen | O | 12/15/17 | 1/8/18 | 33397 | $13,167.03 |
| Michael Besen | O | 5/11/18 | 5/21/18 | 34780 | $75,000.00 |
| Michael Besen | O | 6/25/18 | 6/25/18 | WIRE | $90,000.00 |
| Michael Besen | O | 2/16/18 | 6/27/18 | 33886 | $13,167.03 |

**KOSSOFF, PLLC**

**EXHIBIT 1**
**Direct Besen Payments**

| Payee | Account Type I = IOLA O = Operating | Check/ Payment Date | Check/ Payment Clear Date | Check # | Check/Payment Amount |
|---|---|---|---|---|---|
| Michael Besen | O | 3/19/18 | 6/27/18 | 34221 | $13,167.03 |
| Michael Besen | O | 6/22/18 | 6/27/18 | 35364 | $13,167.03 |
| Michael Besen | O | 6/15/18 | 9/26/18 | 35208 | $13,167.03 |
| Michael Besen | O | 7/6/18 | 9/26/18 | 35531 | $13,167.03 |
| Michael Besen | O | 9/24/18 | 9/27/18 | 36478 | $13,167.03 |
| Michael Besen | O | 9/24/18 | 9/27/18 | 36479 | $13,167.03 |
| Michael Besen | O | 8/10/18 | 10/9/18 | 35952 | $13,167.03 |
| Michael Besen | O | 9/17/18 | 10/9/18 | 36374 | $13,167.03 |
| Michael Besen | I | 11/15/18 | 11/15/18 | WIRE | $200,000.00 |
| Michael Besen | O | 10/8/18 | 12/19/18 | 36603 | $13,167.03 |
| Michael Besen | O | 11/12/18 | 12/19/18 | 37059 | $13,167.03 |
| Michael Besen | O | 1/9/19 | 1/14/19 | 37833 | $13,167.03 |
| Michael Besen | O | 2/4/19 | 3/7/19 | 37985 | $13,167.03 |
| Michael Besen | O | 2/25/19 | 3/8/19 | 38093 | $13,167.03 |
| Michael Besen | O | 3/27/19 | 4/11/19 | 38204 | $13,167.03 |

**KOSSOFF, PLLC**

**EXHIBIT 1**
**Direct Besen Payments**

| Payee | Account Type I = IOLA O = Operating | Check/ Payment Date | Check/ Payment Clear Date | Check # | Check/Payment Amount |
|---|---|---|---|---|---|
| Michael Besen | I | 6/10/19 | 6/10/19 | WIRE | $100,000.00 |
| Michael Besen | O | 6/7/19 | 6/14/19 | 38506 | $25,000.00 |
| Michael Besen | O | 5/28/19 | 6/14/19 | 38460 | $13,167.03 |
| Michael Besen | I | 7/10/19 | 7/10/19 | WIRE | $100,000.00 |
| Michael Besen | O | 7/11/19 | 7/11/19 | WIRE | $25,000.00 |
| Michael Besen | O | 6/20/19 | 7/16/19 | 38550 | $13,167.03 |
| Michael Besen | O | 7/8/19 | 8/15/19 | 38669 | $13,167.03 |
| Michael Besen | O | 8/16/19 | 8/16/19 | WIRE | $25,000.00 |
| Michael Besen | O | 8/26/19 | 9/30/19 | 38903 | $13,167.03 |
| Michael Besen | O | 10/7/19 | 10/9/19 | 39170 | $25,000.00 |
| Michael Besen | O | 9/30/19 | 10/9/19 | 39169 | $13,167.03 |
| Michael Besen | O | 10/21/19 | 11/15/19 | 39269 | $13,167.00 |
| Michael Besen | O | 11/27/19 | 12/18/19 | 39402 | $13,167.00 |
| Michael Besen | O | 2/6/20 | 2/6/20 | WIRE | $45,000.00 |
| Michael Besen | I | 2/7/20 | 2/7/20 | WIRE | $45,000.00 |

**KOSSOFF, PLLC**

**EXHIBIT 1**
**Direct Besen Payments**

| Payee | Account Type I = IOLA O = Operating | Check/ Payment Date | Check/ Payment Clear Date | Check # | Check/Payment Amount |
|---|---|---|---|---|---|
| Michael Besen | O | 4/3/20 | 4/3/20 | WIRE | $100,000.00 |
| Michael Besen | O | 2/27/20 | 4/27/20 | 40249 | $13,167.03 |
| Michael Besen | O | 4/27/20 | 5/28/20 | 40856 | $13,467.03 |
| Michael Besen | I | 7/7/20 | 7/7/20 | WIRE | $100,000.00 |
| Michael Besen | I | 7/27/20 | 7/27/20 | WIRE | $200,000.00 |
| Michael Besen | O | 8/14/20 | 8/14/20 | WIRE | $26,934.06 |
| Michael Besen | O | 9/11/20 | 9/11/20 | WIRE | $75,000.00 |
| Michael Besen | I | 9/23/20 | 9/23/20 | WIRE | $50,000.00 |
| Michael Besen | O | 9/30/20 | 9/30/20 | WIRE | $13,467.03 |
| Michael Besen | I | 1/8/21 | 1/8/21 | WIRE | $100,000.00 |
| Michael Besen | I | 2/3/21 | 2/3/21 | WIRE | $75,000.00 |
| Michael Besen | I | 2/5/21 | 2/5/21 | WIRE | $50,000.00 |
| | | | **Total Direct Payments to Michael Besen:** | | $2,098,367.16 |

## EXHIBIT 2

**Direct Equities Payments**

**KOSSOFF, PLLC**

**EXHIBIT 2**
**Direct Equities Payments**

| Payee | Account Type I = IOLA O = Operating | Check/ Payment Date | Check/ Payment Clear Date | Check # | Check/Payment Amount |
|---|---|---|---|---|---|
| 34447 Equities, Inc. | O | 1/15/16 | 2/3/16 | 24211 | $8,400.00 |
| 34447 Equities, Inc. | O | 1/20/17 | 1/24/17 | 29013 | $8,400.00 |
| 34447 Equities, Inc. | O | 8/7/17 | 8/17/17 | 31676 | $1,250.00 |
| 34447 Equities, Inc. | O | 3/9/18 | 3/15/18 | 34118 | $8,400.00 |
| | | | **Total Direct Equities Payments:** | | $26,450.00 |

## EXHIBIT 3

**Kossoff Deposits into and Debtor Transfers out of Debtor's IOLA Accounts**

# EXHIBIT 3

**Kossoff Deposits into and Debtor Transfers out of Debtor's IOLA Accounts**

| Transaction Date | Payee/Payor | Transaction Type | Amount |
|---|---|---|---|
| **Transfers into IOLA from M. Kossoff** | | | |
| | | | |
| 2/14/17 | Mitchell H Kossoff Pamela A Kossoff | Transfer | $25,000.00 |
| 2/25/17 | Mitchell H Kossoff Pamela A Kossoff | Transfer | $21,000.00 |
| 1/7/21 | Mitchell Hal Kossoff | Transfer | $5,000.00 |
| | **Total Transfers from M. Kossoff:** | | **$51,000.00** |
| | | | |
| **Transfers from IOLA** | | | |
| 3/19/14 | Phyllis Kossoff | Check | $25,000.00 |
| 12/21/16 | Phyllis Kossoff | Check | $40,000.00 |
| 1/4/17 | Phyllis Kossoff | Check | $40,000.00 |
| 2/15/17 | Mitchell H Kossoff Pamela A Kossoff | Transfer | $25,000.00 |
| 3/10/17 | Mitchell H Kossoff Pamela A Kossoff | Transfer | $21,000.00 |
| 2/9/18 | Mitchell Hal Kossoff | Transfer | $65,000.00 |
| 5/5/18 | Phyllis Kossoff | Check | $100,000.00 |
| 3/3/21 | Mitchell Hal Kossoff | Transfer | $25,000.00 |
| | **Total Transfers from IOLA:** | | **$341,000.00** |

## EXHIBIT 4

**Plea Agreement**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART N

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK | PLEA AGREEMENT |
| -against- | Docket No. CR-028944-21NY |
| MITCHELL KOSSOFF, | SCI No. |
| Defendant. | |

1.      This is the plea agreement (the "Agreement") between the Office of the District Attorney of the County of New York (the "District Attorney") and Mitchell Kossoff (the "Defendant"). This Agreement constitutes the entire agreement between the Defendant and the District Attorney. There are no promises, agreements, or conditions, express or implied, other than those set forth in this document. No modification, deletion, or addition to this Agreement will be valid or binding on either party unless put into writing, signed by both parties, and approved by the Court.

2.      At the time of the Defendant's plea, this Agreement shall be made a part of the record and the parties will request the Court's approval thereof. This Agreement will become effective only upon the Court's approval.

3.      This Agreement covers the criminal conduct to which the Defendant is pleading guilty under this Agreement. No other criminal conduct is covered by the terms of this Agreement. This Agreement is limited to the District Attorney and cannot and does not bind other government agencies.

4.      Pursuant to this Agreement, the Defendant shall waive prosecution by indictment and plead guilty under a Superior Court Information to one count of Scheme to Defraud in the First Degree (Penal Law § 190.65[1][b]), one count of Grand Larceny in the First Degree (Penal Law § 155.42), one count of Grand Larceny in the Second Degree (Penal Law § 155.40[1]), and one count of Grand Larceny in the Third Degree (Penal Law § 155.35[1]). The Defendant acknowledges that the maximum sentences that can be imposed for convictions of such offenses are as follows: an indeterminate prison term of 8 1/3 to 25 years for Grand Larceny in the First Degree (a Class B felony); an indeterminate prison term of 5 to 15 years for Grand Larceny in the Second Degree (a Class C felony); an indeterminate prison term of 2 1/3 to 7 years for Grand Larceny in the Third Degree (a Class D felony); and an indeterminate prison term of 1 1/3 to 4 years for Scheme to Defraud in the First Degree (a Class E felony).

5.      The Defendant acknowledges that by entering this plea of guilty, he will forfeit certain constitutional rights, including the right to a trial by jury, the right to confront his

accusers, and the privilege against self-incrimination.  The Defendant specifically will waive, and hereby waives, all defenses and any claims or protections with relation to his plea arising out of any federal or state rights concerning double jeopardy, statute of limitations, speedy trial, speedy sentence, delayed prosecution, geographical jurisdiction, or venue.

6.    The Defendant shall execute a Waiver of Right to Appeal at the time of his plea. The Defendant shall acknowledge, and hereby acknowledges, that he would ordinarily retain his right to appeal even after pleading guilty, but that in this case, he is knowingly and voluntarily waiving that right in exchange for the favorable plea and sentence that he is receiving.  The Defendant shall also acknowledge, and hereby acknowledges, that the appellate rights he is waiving are separate and apart from those rights that he shall automatically forfeit by his guilty plea.

7.    Upon the Defendant's plea of guilty, he will admit under oath before the Court to the following:

a.    From at least December 2017 to April 2021, I was an attorney licensed to practice in New York and the sole member of Kossoff PLLC, a law firm located in Manhattan.  Part of my law firm's business was to collect and hold funds in trust for my clients and other individuals involved in matters relating to my clients.  I did not have permission or authority to disburse the funds without authorization from the relevant parties to do so.

b.    As charged in Count One of the Superior Court Information, I admit that, from on or about December 21, 2017 to on or about April 9, 2021, in the County of New York, I engaged in a systematic ongoing course of conduct with the intent to defraud more than one person and to obtain property from more than one person by false or fraudulent pretenses, representations, or promises.  In doing so, I obtained more than $1,000 from such persons.    In particular, I defrauded multiple clients of my law firm, and other persons involved in matters relating to my clients, by falsely representing that certain funds would be held in escrow and, notwithstanding those representations, intentionally causing unauthorized and impermissible disbursements of those funds.

c.    As part of that scheme, and as charged in Counts Two through Four of the Superior Court Information, I admit to committing the following specific thefts, in the County of New York, from clients of my firm and other persons involved in matters relating to my clients:

i.    From on or about December 21, 2017 through on or about March 16, 2021, I stole more than $50,000 from Anolag LLC and Jacpot 2 LLC.

2

    ii.  From on or about July 9, 2019 through on or about March 16, 2021, I stole more than $1,000,000 from 118 Duane LLC.

    iii.  From on or about April 1, 2021 through on or about April 9, 2021, I stole more than $3,000 from Irwin Ostrega.

    d.  I admit that the individuals and entities listed in the appendix attached to my written plea agreement are some of the victims of the crimes to which I am pleading guilty today.  I also admit that, by committing those crimes, I caused those victims to incur the losses listed in the appendix and that I owe those amounts to those victims.

8.    The Defendant acknowledges that the individuals and entities listed in the appendix attached to this Agreement (the "Appendix") are victims of the crimes to which the Defendant is pleading guilty.  The Defendant also acknowledges that the monetary amounts listed in the Appendix reflect losses that he caused and owes to the respective victims as a result of his crimes.  The District Attorney and the Defendant agree that, at the time of the Defendant's sentencing, and as part of the Defendant's sentence, the Court shall issue judgment orders against the Defendant in favor of those victims listed in the Appendix.  The Defendant acknowledges the bases for those judgment orders and agrees to waive, and hereby waives, any restitution/reparation hearing pursuant to Penal Law § 60.27(2) and Criminal Procedure Law § 400.30 in connection with his guilty pleas under this Agreement.

9.    The Defendant represents that he has full and sole title to a condominium with an address of Twinlights Terrace, Unit I-9, Highlands, New Jersey, 07732 (Block: 11.08; Lot: 9) (the "Condominium"), with a last known tax assessment value of approximately $311,400 for the year 2021, according to the public records of the Monmouth County Clerk's Office.  Prior to the Defendant's sentencing, and as a condition of the promised sentences set forth in paragraph 10 below, the Defendant shall transfer title to the Condominium to Albert Togut (not individually but solely in his capacity as Chapter 7 Interim Trustee for Kossoff PLLC) and provide proof of such transfer to the District Attorney.  If the transfer has not occurred prior to the Defendant's sentencing, the Defendant must show good cause why the transfer was not performed.  The Defendant agrees that it shall be within the District Attorney's sole discretion to determine whether the transfer occurred or whether the Defendant has demonstrated good cause why it did not.

10.    The District Attorney and the Defendant agree that if the Defendant satisfies all of the conditions sets forth in this Agreement, as determined solely by the District Attorney, the District Attorney shall recommend and the Court shall impose the following indeterminate prison terms for the crimes to which the Defendant is pleading guilty, with all of the sentences to be run concurrently: 4.5 to 13.5 years for the count of Grand Larceny in the First Degree; 4.5 to 13.5 years for the count of Grand Larceny in the Second Degree; 2 1/3 to 7 years for the count of Grand Larceny in the Third Degree; and 1 1/3 to 4 years for the count of Scheme to Defraud in the First Degree.

3

11.    The District Attorney and the Defendant further agree that, between the date of the Defendant's guilty plea and the date of his sentencing, the Defendant shall return to court on all scheduled court dates, report to the New York City Department of Probation as ordered by the Court, and refrain from any behavior that would cause him to be re-arrested on criminal charges.  If the Defendant fails to satisfy any of those conditions or the conditions set forth in paragraph 9 above, as determined solely by the District Attorney, the District Attorney can recommend, and the Court can impose, any sentences authorized by law for the offenses to which the Defendant is pleading guilty under this Agreement.

12.    The Defendant enters into this Agreement, including all waivers contained herein, knowingly, intelligently, and voluntarily and after discussion and consultation with his attorney, Walter Mack.  The Defendant has had a full opportunity to discuss this Agreement with his attorney, and any questions he may have had have been answered to his satisfaction.

Dated: New York, New York

_____


_____     _____
Mitchell Kossoff                                             Doar Rieck Kaley & Mack
Defendant                                                   Attorney for Defendant


_____     _____
Ryan Gee                                                    Catherine McCaw
Assistant District Attorney                                 Assistant District Attorney


Approved: _____
              Justice of the Supreme Court

4

## APPENDIX TO PLEA AGREEMENT
## PEOPLE V. MITCHELL KOSSOFF (DOCKET NO. CR-028944-21NY)

| VICTIM | AMOUNT OWED |
|---|---|
| Gran Sabana Corporation | $4,478,784.24 |
| 118 Duane LLC | $2,425,000.00 |
| SSM Realty Group II LLC | $1,300,000.00 |
| Darlene Hart and Lorraine Kinyk | $1,250,000.00 |
| Decker Associates LLC | $800,000.00 |
| 537 Realty Associates LLC | $590,000.00 |
| Prince Street Holdings LLC | $525,000.00 |
| Sasson Real Estate Group | $342,500.00 |
| Ilomai Kurrik and Arthur Nigel Jones | $305,064.16 |
| Heiner Freidrich | $291,000.00 |
| Louis Girodano and Jeanmarie Giordano | $250,000.00 |
| Jonathan Ostrow | $250,000.00 |
| Anolag LLC and Jacpot 2 LLC | $220,051.88 |
| 47 Mercer Street I LLC, 47 Mercer Street II LLC, 47 Mercer Street III LLC, and 47 Mercer Street IV LLC | $199,600.38 |
| Irwin Ostrega | $159,584.93 |
| Chad Eggers | $158,000.00 |
| Centennial Properties NY Inc. | $150,000.00 |
| Lawrence A. Alexander Irrevocable Trust | $117,000.00 |
| Robert Altemus | $89,900.00 |
| Darren Katz and Peter Myers | $77,000.00 |
| 5557 LLC | $75,000.00 |
| 51 West 11 Realty LLC and Beth Mollins | $65,000.00 |
| Georgica Capital Partners LLC | $61,250.00 |
| CF E 88 LLC and SM E 88 LLC | $60,000.00 |
| Thomas Sneva | $57,300.00 |
| 6 West 75th Street LLC and 112-113 West 75th Street LLC | $55,187.73 |
| Robert Rugani | $49,900.00 |
| Delis Realty Corporation | $45,000.00 |
| 112-113 West 75th Street LLC | $40,000.00 |
| Estate of Jasper Edward Peyton, Jr. | $34,000.00 |
| Jason Breitstone | $30,625.00 |
| David Shorenstein | $30,625.00 |
| Jason Rosenblum | $17,410.13 |
| 6 West 75th Street LLC | $10,000.00 |
| David Svenson | $7,589.87 |

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

THE PEOPLE OF THE STATE OF NEW YORK

-against-

MITCHELL KOSSOFF,

                                        Defendant.

---

**PLEA AGREEMENT**

**DOCKET NO.**

**SCI NO.**

---

Cyrus R. Vance, Jr.
District Attorney
New York County
One Hogan Place
New York, New York 10013
(212) 335-9000

Ryan Gee
Assistant District Attorney
Of Counsel

# EXHIBIT 5

## Group One Transfers

**KOSSOFF, PLLC**

**EXHIBIT 5**
**Group One Transfers**

| Payee | Account Type I = IOLA O = Operating | Check/ Payment Date | Check/ Payment Clear Date | Check # | Check/Payment Amount |
|---|---|---|---|---|---|
| Michael Besen | O | 10/3/16 | 10/7/16 | 27706 | $6,661.23 |
| Michael Besen | O | 11/4/16 | 11/10/16 | 28112 | $6,661.23 |
| Michael Besen | O | 12/5/16 | 12/12/16 | 28503 | $6,661.23 |
| Michael Besen | O | 1/17/17 | 2/1/17 | 29028 | $6,661.23 |
| Michael Besen | I | 2/6/17 | 2/6/17 | WIRE | $50,000.00 |
| Michael Besen | O | 2/28/17 | 3/8/17 | 29504 | $6,661.23 |
| Michael Besen | O | 2/28/17 | 3/8/17 | 29505 | $2,220.41 |
| Michael Besen | I | 3/9/17 | 3/9/17 | WIRE | $50,000.00 |
| Michael Besen | O | 3/30/17 | 4/3/17 | 29921 | $2,220.41 |
| Michael Besen | O | 3/30/17 | 4/3/17 | 29922 | $6,661.23 |
| Michael Besen | O | 4/25/17 | 5/2/17 | 30272 | $6,661.23 |
| Michael Besen | O | 4/25/17 | 5/2/17 | 30273 | $2,220.41 |
| Michael Besen | O | 5/19/17 | 5/24/17 | 30575 | $6,661.23 |
| Michael Besen | O | 5/19/17 | 5/24/17 | 30576 | $2,220.41 |

**KOSSOFF, PLLC**

## EXHIBIT 5
### Group One Transfers

| Payee | Account Type I = IOLA O = Operating | Check/ Payment Date | Check/ Payment Clear Date | Check # | Check/Payment Amount |
|---|---|---|---|---|---|
| Michael Besen | O | 6/1/17 | 7/7/17 | 31018 | $6,661.23 |
| Michael Besen | O | 6/1/17 | 7/7/17 | 31019 | $2,220.41 |
| Michael Besen | O | 7/10/17 | 8/7/17 | 31299 | $6,661.23 |
| Michael Besen | O | 7/10/17 | 8/7/17 | 31300 | $2,220.41 |
| Michael Besen | O | 8/14/17 | 8/11/17 | 31675 | $2,220.41 |
| Michael Besen | O | 8/14/17 | 8/11/17 | 31674 | $6,661.23 |
| Michael Besen | O | 9/11/17 | 9/21/17 | 32146 | $6,661.23 |
| Michael Besen | O | 9/11/17 | 9/21/17 | 32147 | $2,220.41 |
| Michael Besen | O | 9/26/17 | 10/11/17 | 32316 | $2,220.41 |
| Michael Besen | O | 9/26/17 | 10/11/17 | 32315 | $6,661.23 |
| Michael Besen | O | 9/29/17 | 10/11/17 | 32326 | $3,743.67 |
| Michael Besen | O | 11/6/17 | 12/5/17 | 32813 | $13,167.03 |
| Michael Besen | O | 12/15/17 | 1/8/18 | 33397 | $13,167.03 |
| Michael Besen | O | 5/11/18 | 5/21/18 | 34780 | $75,000.00 |
| Michael Besen | O | 6/25/18 | 6/25/18 | WIRE | $90,000.00 |

**KOSSOFF, PLLC**

**EXHIBIT 5**
**Group One Transfers**

| Payee | Account Type I = IOLA O = Operating | Check/ Payment Date | Check/ Payment Clear Date | Check # | Check/Payment Amount |
|---|---|---|---|---|---|
| Michael Besen | O | 2/16/18 | 6/27/18 | 33886 | $13,167.03 |
| Michael Besen | O | 3/19/18 | 6/27/18 | 34221 | $13,167.03 |
| Michael Besen | O | 6/22/18 | 6/27/18 | 35364 | $13,167.03 |
| Michael Besen | O | 6/15/18 | 9/26/18 | 35208 | $13,167.03 |
| Michael Besen | O | 7/6/18 | 9/26/18 | 35531 | $13,167.03 |
| Michael Besen | O | 9/24/18 | 9/27/18 | 36478 | $13,167.03 |
| Michael Besen | O | 9/24/18 | 9/27/18 | 36479 | $13,167.03 |
| Michael Besen | O | 8/10/18 | 10/9/18 | 35952 | $13,167.03 |
| Michael Besen | O | 9/17/18 | 10/9/18 | 36374 | $13,167.03 |
| Michael Besen | I | 11/15/18 | 11/15/18 | WIRE | $200,000.00 |
| Michael Besen | O | 10/8/18 | 12/19/18 | 36603 | $13,167.03 |
| Michael Besen | O | 11/12/18 | 12/19/18 | 37059 | $13,167.03 |
| Michael Besen | O | 1/9/19 | 1/14/19 | 37833 | $13,167.03 |
| Michael Besen | O | 2/4/19 | 3/7/19 | 37985 | $13,167.03 |
| Michael Besen | O | 2/25/19 | 3/8/19 | 38093 | $13,167.03 |

**KOSSOFF, PLLC**

**EXHIBIT 5**
**Group One Transfers**

| Payee | Account Type I = IOLA O = Operating | Check/ Payment Date | Check/ Payment Clear Date | Check # | Check/Payment Amount |
|---|---|---|---|---|---|
| Michael Besen | O | 3/27/19 | 4/11/19 | 38204 | $13,167.03 |
| Michael Besen | I | 6/10/19 | 6/10/19 | WIRE | $100,000.00 |
| Michael Besen | O | 6/7/19 | 6/14/19 | 38506 | $25,000.00 |
| Michael Besen | O | 5/28/19 | 6/14/19 | 38460 | $13,167.03 |
| Michael Besen | I | 7/10/19 | 7/10/19 | WIRE | $100,000.00 |
| Michael Besen | O | 7/11/19 | 7/11/19 | WIRE | $25,000.00 |
| Michael Besen | O | 6/20/19 | 7/16/19 | 38550 | $13,167.03 |
| Michael Besen | O | 7/8/19 | 8/15/19 | 38669 | $13,167.03 |
| Michael Besen | O | 8/16/19 | 8/16/19 | WIRE | $25,000.00 |
| Michael Besen | O | 8/26/19 | 9/30/19 | 38903 | $13,167.03 |
| Michael Besen | O | 10/7/19 | 10/9/19 | 39170 | $25,000.00 |
| Michael Besen | O | 9/30/19 | 10/9/19 | 39169 | $13,167.03 |
| Michael Besen | O | 10/21/19 | 11/15/19 | 39269 | $13,167.00 |
| Michael Besen | O | 11/27/19 | 12/18/19 | 39402 | $13,167.00 |
| Michael Besen | O | 2/6/20 | 2/6/20 | WIRE | $45,000.00 |

**KOSSOFF, PLLC**

**EXHIBIT 5**
**Group One Transfers**

| Payee | Account Type I = IOLA O = Operating | Check/ Payment Date | Check/ Payment Clear Date | Check # | Check/Payment Amount |
|---|---|---|---|---|---|
| Michael Besen | I | 2/7/20 | 2/7/20 | WIRE | $45,000.00 |
| Michael Besen | O | 4/3/20 | 4/3/20 | WIRE | $100,000.00 |
| Michael Besen | O | 2/27/20 | 4/27/20 | 40249 | $13,167.03 |
| 34447 Equities, Inc. | O | 1/15/16 | 2/3/16 | 24211 | $8,400.00 |
| 34447 Equities, Inc. | O | 1/20/17 | 1/24/17 | 29013 | $8,400.00 |
| 34447 Equities, Inc. | O | 8/7/17 | 8/17/17 | 31676 | $1,250.00 |
| 34447 Equities, Inc. | O | 3/9/18 | 3/15/18 | 34118 | $8,400.00 |
| | | | **Total Group One Transfers:** | | $1,420,949.04 |

## EXHIBIT 6

**Group Two Transfers**

**KOSSOFF, PLLC**

**EXHIBIT 6**
**Group Two Transfers**

| Payee | Account Type I = IOLA O = Operating | Check/ Payment Date | Check/ Payment Clear Date | Check # | Check/Payment Amount |
|---|---|---|---|---|---|
| Michael Besen | O | 4/27/20 | 5/28/20 | 40856 | $13,467.03 |
| Michael Besen | I | 7/7/20 | 7/7/20 | WIRE | $100,000.00 |
| Michael Besen | I | 7/27/20 | 7/27/20 | WIRE | $200,000.00 |
| Michael Besen | O | 8/14/20 | 8/14/20 | WIRE | $26,934.06 |
| Michael Besen | O | 9/11/20 | 9/11/20 | WIRE | $75,000.00 |
| Michael Besen | I | 9/23/20 | 9/23/20 | WIRE | $50,000.00 |
| Michael Besen | O | 9/30/20 | 9/30/20 | WIRE | $13,467.03 |
| Michael Besen | I | 1/8/21 | 1/8/21 | WIRE | $100,000.00 |
| Michael Besen | I | 2/3/21 | 2/3/21 | WIRE | $75,000.00 |
| Michael Besen | I | 2/5/21 | 2/5/21 | WIRE | $50,000.00 |
| | | | **Total Group Two Transfers:** | | $578,868.12 |

## EXHIBIT 7

**Two Year Transfers**

**KOSSOFF, PLLC**

**EXHIBIT 7**
**Two Year Transfers**

| Payee | Account Type I = IOLA O = Operating | Check/ Payment Date | Check/ Payment Clear Date | Check # | Check/Payment Amount |
|---|---|---|---|---|---|
| Michael Besen | I | 6/10/19 | 6/10/19 | WIRE | $100,000.00 |
| Michael Besen | O | 6/7/19 | 6/14/19 | 38506 | $25,000.00 |
| Michael Besen | O | 5/28/19 | 6/14/19 | 38460 | $13,167.03 |
| Michael Besen | I | 7/10/19 | 7/10/19 | WIRE | $100,000.00 |
| Michael Besen | O | 7/11/19 | 7/11/19 | WIRE | $25,000.00 |
| Michael Besen | O | 6/20/19 | 7/16/19 | 38550 | $13,167.03 |
| Michael Besen | O | 7/8/19 | 8/15/19 | 38669 | $13,167.03 |
| Michael Besen | O | 8/16/19 | 8/16/19 | WIRE | $25,000.00 |
| Michael Besen | O | 8/26/19 | 9/30/19 | 38903 | $13,167.03 |
| Michael Besen | O | 10/7/19 | 10/9/19 | 39170 | $25,000.00 |
| Michael Besen | O | 9/30/19 | 10/9/19 | 39169 | $13,167.03 |
| Michael Besen | O | 10/21/19 | 11/15/19 | 39269 | $13,167.00 |
| Michael Besen | O | 11/27/19 | 12/18/19 | 39402 | $13,167.00 |
| Michael Besen | O | 2/6/20 | 2/6/20 | WIRE | $45,000.00 |

**KOSSOFF, PLLC**

**EXHIBIT 7**
**Two Year Transfers**

| Payee | Account Type I = IOLA O = Operating | Check/ Payment Date | Check/ Payment Clear Date | Check # | Check/Payment Amount |
|---|---|---|---|---|---|
| Michael Besen | I | 2/7/20 | 2/7/20 | WIRE | $45,000.00 |
| Michael Besen | O | 4/3/20 | 4/3/20 | WIRE | $100,000.00 |
| Michael Besen | O | 2/27/20 | 4/27/20 | 40249 | $13,167.03 |
| Michael Besen | O | 4/27/20 | 5/28/20 | 40856 | $13,467.03 |
| Michael Besen | I | 7/7/20 | 7/7/20 | WIRE | $100,000.00 |
| Michael Besen | I | 7/27/20 | 7/27/20 | WIRE | $200,000.00 |
| Michael Besen | O | 8/14/20 | 8/14/20 | WIRE | $26,934.06 |
| Michael Besen | O | 9/11/20 | 9/11/20 | WIRE | $75,000.00 |
| Michael Besen | I | 9/23/20 | 9/23/20 | WIRE | $50,000.00 |
| Michael Besen | O | 9/30/20 | 9/30/20 | WIRE | $13,467.03 |
| Michael Besen | I | 1/8/21 | 1/8/21 | WIRE | $100,000.00 |
| Michael Besen | I | 2/3/21 | 2/3/21 | WIRE | $75,000.00 |
| Michael Besen | I | 2/5/21 | 2/5/21 | WIRE | $50,000.00 |
| | | | **Total Two Year Transfers:** | | $1,161,037.27 |

# EXHIBIT 8

**Preferential Transfers**

**KOSSOFF, PLLC**

**EXHIBIT 8**
**Preferential Transfers**

| Payee | Account Type<br>I = IOLA<br>O = Operating | Check/<br>Payment<br>Date | Check/<br>Payment<br>Clear Date | Check # | Check/Payment<br>Amount |
|---|---|---|---|---|---|
| Michael Besen | I | 2/3/21 | 2/3/21 | WIRE | $75,000.00 |
| Michael Besen | I | 2/5/21 | 2/5/21 | WIRE | $50,000.00 |
| | | | **Total Preferential<br>Transfers:** | | $125,000.00 |